### GRAY v. PANKEY. (6 Div. 150.)

(Supreme Court of Alabama. May 22, 1924. Rehearing Denied June 26, 1924.)

1. Brokers ⚖65(4)—Broker's fraud in representing both vendor and purchaser held to defeat action for commissions.

Broker's fraud in representing both vendors and purchaser of timber and land, without disclosing such fact to vendors, *held* to defeat his action against purchaser for commissions, though purchaser knew of the dual agency, consented to it, and received the benefit of the commissions paid by vendors.

**2. Brokers ⊚⟳65(4)—Broker or agent cannot represent vendor and vendee.**

Broker or agent, who acts for both vendor and vendee in sale and purchase of land, is guilty of fraud, which prevents recovery of commissions or compensation from either, and effect of dual representation can be avoided only by showing that both parties knew of his relation and consented thereto.

### On Application for Rehearing.

**3. Evidence ⊚⟳265(1)—Admission in testimony held to dispense with proof of facts.**

An admission in testimony is binding on party and dispenses with necessity of proving facts admitted.

**4. Brokers ⊚⟳65(4)—Duty of broker authorized to sell to disclose to principal he is acting for purchaser.**

It was not error to charge that, if broker acted for himself and not for his principal, verdict could not be in his favor, unless he fully disclosed all facts and circumstances of transaction to principal and received his ratification.

**5. Trial ⊚⟳262 — Giving of requested charge held not to estop defendant from requesting others.**

In broker's action for commissions, giving of defendant's requested charge that, if broker acted for himself and not for his principal, he could not recover, unless he disclosed facts and circumstances to the principal, did not estop him from requesting charges that, if broker agreed with purchaser to obtain best terms, and then without purchaser's knowledge agreed to represent vendors' interests, conflict in duties prevented recovery, unless he kept both parties informed as to dual representation.

Appeal from Circuit Court, Jefferson County; Roger Snyder, Judge.

Action for damages for breach of an agreement by Alex Pankey against A. J. Gray. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Brenton K. Fisk, of Birmingham, for appellant.

It was not necessary to the defense here set up that defendant be ignorant of the relation between plaintiff and the vendors, if the vendors were ignorant of his relations to defendant. Green v. So. States Lbr. Co., 163 Ala. 511, 50 South. 917; Id., 141 Ala. 680, 37 South. 670; Bell v. McConnell, 37 Ohio St. 400, 41 Am. Rep. 528; Rice v. Wood, 113 Mass. 133, 18 Am. Rep. 459; Bollman v. Boomis, 41 Conn. 581; Jenson v. Bowen, 37 N. D. 352, 164 N. W. 4; Rice v. Davis, 136 Pa. 439, 20 Atl. 513, 20 Am. St. Rep. 931; Lynch v. Fallon, 11 R. I. 311, 23 Am. Rep. 458; Farnsworth v. Hemmer, 1 Allen (Mass.) 494, 79 Am. Dec. 756; Walker v. Osgood, 98 Mass. 348, 93 Am. Dec. 168; Scribner v. Collar, 40 Mich. 375, 29 Am. Rep. 541; Murray v. Beard, 102 N. Y. 505, 7 N. E. 553; Meyer v. Hanchett, 39 Wis. 419; Strawbridge v. Swan, 43 Neb. 781, 62 N. W. 199; Raisin v. Clark, 41 Md. 158, 20 Am. Rep. 66; De Hart v. Johnson, 201 Ala. 497, 78 South. 851; Empire Securities Co. v. Webb, 202 Ala. 549, 81 South. 51; Harten v. Loffler, 31 App. D. C. 362; Glenn v. Rice, 174 Cal. 269, 162 Pac. 1020; 4 R. C. L. 328. The facts being conceded, this was a cases for a directed verdict. 26 R. C. L. 1067; 38 Cyc. 1567.

Black, Harris & Foster, of Birmingham, for appellee.

Where the principal knows there is a double agency, he may waive the fraud of the agent and the agent may recover. 9 C. J. 568. If the agent brings the parties together, and they settle the terms, he may recover from both. 9 C. J. 576; 4 R. C. L. 330; Handley v. Shaffer, 177 Ala. 636, 59 South. 286. Where a broker is employed by one party, payment of a compensation or commission by the other party does not constitute representation of both parties. De Hart v. Johnson, 201 Ala. 497, 78 South. 851; Hutson v. Yerkes, 208 Ala. 406, 94 South. 529; Campbell v. Yager, 32 Neb. 266, 49 N. W. 181; Carr v. Ubsdell, 97 Mo. App. 326, 71 S. W. 112. The question of bad faith was one for the jury. Long-Lewis Hdw. Co. v. Ewing, 13 Ala. App. 435, 68 South. 794; 31 Cyc. 1643, 1670; Warrant W. H. Co. v. Cook, 209 Ala. 60, 95 South. 282. Appellant, having voluntarily induced the court to charge the jury that the principal may ratify the conduct of the agent, is not entitled to a reversal on the ground that the transaction cannot be ratified. Clinton Min. Co. v. Bradford, 192 Ala. 576, 69 South. 4. If an agent acts in bad faith to his principal and forfeits his right to commission, the principal may waive the benefit of the forfeiture. Clay v. Cummins, 201 Ala. 34, 77 South. 328; Hafner v. Herron, 165 Ill. 242, 46 N. E. 211; Stumpf v. Norton, 124 Minn. 93, 144 N. W. 469; Bartleson v. Vanderhoof. 96 Minn. 184, 104 N. W. 820; Smythe's Estate v. Evans, 209 Ill. 376, 70 N. E. 906; 31 Cyc. 1500.

MILLER, J. The appellee, Alex Pankey, sued the appellant, A. J. Gray, for commissions on a timber and land deal, made by him for the defendant, under a written contract for commissions for the timber and a subsequent verbal contract as to commissions for the land on which the timber was situated. The defendant pleaded general issue, with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action, to have effect as if so pleaded, and with leave to plaintiff to give in evidence any matter which, if well pleaded, would be admissible in reply to such defensive matter, to have effect as if so pleaded. The jury returned a verdict in favor of the plaintiff, and from a judgment

thereon by the court this appeal is prosecuted by the defendant.

[1, 2] The defendant asked, and the court refused to give, this written charge numbered 1 to the jury:

"Gentlemen of the jury, if you believe the evidence in this case, your verdict cannot be in favor of the plaintiff."

Did the court err in refusing to give it to the jury? A broker or agent, who acts for both the vendor and the vendee to a sale and purchase of real estate, is guilty of fraud which will prevent him from recovering commissions or compensation from either. The broker or agent "can only avoid its effect to deny him compensation by showing that both parties knew of his relation in the premises, and, so knowing, consented to his acting in such inconsistent capacities." He must show "both principals are given fully to understand the situation and consent thereto." Green v. Southern State Lbr. Co., 163 Ala. 511, 50 South. 917; De Hart v. Johnson, 201 Ala. 497, 78 South. 851. After making such showing, the broker or agent may recover the compensation the vendor and vendee respectively agreed to pay him, "provided he has not fraudulently favored one at the expense of the other"; if he has, then he cannot recover compensation from either the vendor or the vendee under their respective executory contracts with him. 4 R. C. L. § 64, p. 329, notes 19 and 1; 24 L. R. A. [N. S.] 661, note, and authorities supra.

The parties agree they executed the written contract set out in count 1 of the complaint as amended, and there is no dispute between them in their testimony as to the compensation contracted to pay for commissions on the timber. They disagree as to the amount of the timber on the land. They also agree that an oral contract was made by them for compensation for this land purchased with timber on it; but they disagree in the evidence as to the terms and compensation to be paid plaintiff by defendant for services rendered thereunder.

This written contract between plaintiff and defendant was executed on February 21, 1922. The plaintiff received a letter, dated April 25, 1922, written by R. F. Abbe to him. In it he states:

"My lowest price is $10 an acre or $3,000 for the 300 acres next to Speers land and $10,000 for the 1,000 acres along the Georgia state line. I am willing to pay you a commission of 5 per cent. if you can sell the land for that price."

The plaintiff testified, "There were 1,553 acres in the Abbe tract, fractions and all," which he received from R. F. Abbe for the defendant. He also testified:

"I absolutely did not accept from anybody a commission for the sale of his land Mr. Gray did not know about. The commission from Abbe was paid in this manner: We agreed he wanted $10 an acre and if I found him a buyer he would give me 5 per cent. Really, at that time, I had that understanding a year before that—about the commission if I found a buyer. I didn't know who would buy it. I did not know Mr. Gray would buy it. If I didn't sell him, I would sell to somebody else; but when Mr. Gray bought it I dropped that commission business. I was to get 5 per cent. if I found a buyer. I was under contract to buy for Gray, and that is what I was doing. I finally got Abbe down to $13,000. Five per cent. would be $650, and as I told Gray at first, and wrote him later on—I told Gray I was going to get it, and tried to—I wanted to put it in on the option, Abbe's option, but he wouldn't consent to it. In fact, after I made that long trip Abbe backed down, and I had to work every way I could to get the deal through. Mr. Gray was to pay $13,000. I tried to make the draft for it less the 5 per cent., and he wouldn't do it."

On May 29, 1922, the plaintiff wrote a letter to the defendant in which he states:

"His [R. F. Abbe's] price was $15,000; said he would never sell for any less. I wrote him afterwards, and offered him $13,000 if he would give me 5 per cent. commissions, etc. Now, when we were in Jax last time and I was ready to close out, he backed down on me, but finally agreed to make option and allow the 5 per cent."

The defendant paid R. F. Abbe $13,000 for this land and the timber on it. The plaintiff testified also:

"Now, about this commission business: Abbe paid me a $300 commission by check, but Gray [defendant] got the benefit of it. He charged me with it. * * * Abbe did not know that I had a contract with Gray for compensation."

The plaintiff secured land and timber from W. L. Parish for the defendant. The defendant paid Parish $16,000 for it, and Parish paid plaintiff $500 by check, which states:

"This is pay in full for commission for selling lands at Ashloga as agreed by the two named on check."

The check was signed by Parish, payable to plaintiff, was indorsed by plaintiff, and was paid. The plaintiff wrote Parish, in which he stated:

"I am making sight draft on you through my bank for the $800 in full for all commissions."

This draft was not paid. Parish afterwards paid plaintiff $500 commissions by check as above stated. The plaintiff testified:

"I gave him [defendant] credit for $500 that had been paid me by Parish. * * * Mr. Parish and I never did have any agreement in writing about a commission. He paid me $500 on the Liberty county land for a commission, helping to get the deal through. I told Gray [defendant] I was going to trade and get some-

thing out of Parish, and after the deal Mr. Parish told me, if the deal went through, he would help me out some."

The plaintiff also testified that he had a conversation with defendant at River Junction as follows:

"Directly after the Abbe matter, I told him at River Junction, in room 5: 'I have this stuff down pretty low to a reasonable value, a fair price, and I am going to try to get a little out of it. I may cut it down a little more. I may get them to pay me a little something and give you credit for it.' And he says, 'That's all right;' and I did. I worked hard on it, and tried to get it like I told you. Before I mentioned the matter to Parish, I had taken it up with Gray. Gray knew it all the time. We discussed that. He has letters where he offered me a commission if I found a buyer in this case. It is absolutely not a fact that Gray first learned of the Parish commission when we were discussing the final settlement."

This question, to which he made the reply below, was asked plaintiff on cross-examination by the defendant:

"Q. I suppose you stated the facts to Parish just as they were, whenever you stated any facts to him about this commission business, didn't you?" A. "Why, I was after getting some money from Mr. Gray. If Parish had known I was getting it, probably I would not have gotten that money, and I told Gray so; that I wouldn't have got it. I was trying to get the stuff down for Gray, to bring the price of the stuff down."

The options on these lands from Parish and Abbe were taken by the plaintiff in the name of the defendant.

This evidence, testimony of the plaintiff in his own behalf, shows he was acting for the vendors, Parish and Abbe, in the sale of these lands and timber, as their agent, under agreement with them for commissions to aid in selling it, and his testimony also shows that he was at the same time under contract, written and oral, representing the defendant, A. J. Gray, the vendee, in purchasing this land and timber for him. His testimony clearly indicates that his principal, the defendant, the vendee, was given full understanding of the situation, and he consented thereto and was benefited thereby; and it is evident and clear from his testimony that his other principals, the vendors, Parish and Abbe, were not given clearly and fully to understand the situation by him, or that they after full knowledge consented to it. His testimony shows he purposely concealed from them, the vendors, the fact that he was under contract with the vendee, the defendant, and that he was to be compensated by the vendee for these services also. These concealed facts were material. The plaintiff's testimony in his own behalf shows he did not act in good faith with the vendors.

The defendant paid plaintiff the sum of $650 as part payment under their contract for aiding in securing lands and timber from Parish and Abbe; afterwards they met and had a settlement. The plaintiff contends and testifies it was a partial settlement, and defendant still owes him a large amount for services rendered under the contracts in these transactions. The defendant states and testifies it was a full and final settlement, in full payment under both contracts for all he was due the plaintiff. The plaintiff and defendant both agree as to the items of the settlement. Defendant testified he owed the plaintiff the sum of $2,050 for services rendered under the contracts in these transactions; that he had paid him $650 thereon; that the $500 paid plaintiff by Parish as commission, was credited on it, and the $300 paid plaintiff by Abbe as commission was credited on it, and he paid him in cash that day $600, which made the total amount due plaintiff by defendant, $2,050, paid in full; and this settlement was full and final.

The plaintiff testified that he consented for the $500 received by him from Parish and the $300 received by him from Abbe to be credited on the amount due him by the defendant as if paid by the defendant to him, and that the defendant paid him heretofore $650 and paid him that day $600, which made $2,050 paid him by defendant on the contracts in these transactions; but that was a partial settlement, and did not include the full amount due him by defendant under the contracts for services rendered in these transactions with Parish and Abbe.

The purchase price paid Abbe by defendant was reduced $300 by the commissions received out of it by plaintiff. The purchase price paid Parish by the defendant was reduced $500 by the commissions received out of it by plaintiff. These amounts were credited, as if paid by defendant, on the contract debt due plaintiff by the defendant in these transactions. The plaintiff represented the vendors as agent in the transactions, and they paid him therefor $800. The plaintiff represented the vendee, the defendant, in these same transactions, at the same time, and under their contract the vendee received the benefit of the $800 paid by the vendors to plaintiff. The plaintiff did not fully disclose to the vendors that he was under contract in these transactions with the vendee and would be paid by him, and the commissions or compensation received by him from the vendors would go to the defendant, the vendee, under his agreement with the vendee.

The individual testimony of plaintiff shows that he acted as agent for both the vendors, Parish and Abbe, and the vendee, the defendant, in the sale and purchase of these lands and timber; the plaintiff fails to show that the vendors, Parish and Abbe, were given fully to understand by him the situation, and with full knowledge thereof they consented for him to act as agent for both prin-

cipals. The testimony of plaintiff shows he concealed material facts from the vendors, did not let them know he was under contract in this transaction to represent the vendee, the defendant, and would be compensated by the vendee and whatever he secured as compensation from the vendors would go to the vendee, and the evidence clearly shows, through the individual testimony of plaintiff and the defendant, without dispute, that the vendors were thereby defrauded out of $800, and the vendee was favored by receiving it as a credit on his debt to the plaintiff in this transaction. The individual testimony of plaintiff shows, as agent of both vendors and vendee, he fraudulently favored the vendee to the amount of $800 at the expense of the vendors. This fraud will deprive plaintiff of the right to recover of the defendant the balance due as claimed by him under their executory contracts, if true, as contended for by him and his evidence. Authorities supra.

The court should have given the foregoing written charge numbered 1, requested by the defendant.

The only other error assigned that was argued by appellant was the motion of defendant for new trial, which was refused by the court. The defendant insists it should have been granted, because the verdict of the jury was contrary to the law and the evidence. We need not discuss and pass on this alleged error.

For the error mentioned, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

## On Application for Rehearing.

MILLER, J. [3] The general rule is thus stated in 22 Corpus Juris, 422, notes 8 and 9:

"An admission in testimony of a party is binding on him and dispenses with the necessity of proving the facts admitted."

See, also, 22 Corpus Juris, 421, note 98; Starke v. Kenan, 11 Ala. 818; Tumlin v. Tumlin, 195 Ala. 457, 70 South. 254. In 26 R. C. L. 1067, notes 3 and 4, we find:

"There can, of course, be no question but that, where the facts are conceded or are undisputed, there is a plain case for the direction of a verdict, as there can be only a question of law involved."

The plaintiff here admits and concedes in his testimony the facts. He admits he was agent of the vendors, Abbe and Parish, and the vendee, at the same time in these transactions; that he concealed material facts from the vendors, and the vendors did not consent for him to act in such inconsistent capacity; the vendee was benefited and the vendors injured by his dual employment and relationship in the sales and purchases of the timber and lands. True, there may be slight evidence indicating plaintiff was not agent for the vendors in these transactions; but these admissions of the plaintiff in his testimony are binding on him. The plaintiff admits under oath that one vendor paid him $500 and the other paid him $300 as commissions for aiding them in selling their respective lands and timber to the defendant, and the defendant received the benefit of this $800. His own testimony shows he committed a fraud in these transactions against the vendors, which rendered the contracts on. which the suit is based inoperative and void, and which would have justified the court in giving the general charge numbered 1, set out in the opinion. Green v. Southern State Lbr. Co., 163 Ala. 511, 50 South. 917; De Hart v. Johnson, 201 Ala. 497, 78 South. 851, and authorities supra.

[4] It is true the court, at the request of the defendant, gave this written charge numbered 12 to the jury:

"Gentlemen of the jury, the court charges you that, if Pankey acted for himself and not for his principal in any of his dealings under the contract on which he has sued, your verdict cannot be in his favor, unless you are reasonably satisfied from the evidence that he fully disclosed all the facts and circumstances of the transaction to Gray, and received Gray's ratification thereof."

This charge states the law in part according to the opinion of this court. It applies to one phase of the evidence. It was the duty of the plaintiff to fully disclose all of the facts and circumstances of the transactions to the defendant. If he failed to do so, or if he did, and the defendant failed to consent to his dual employment, then he could not recover. It was also the duty of the plaintiff to give the vendors to fully understand the situation and secure their consent to his dual employment; if he failed to do so, then he could not recover compensation from the defendant. Authorities supra.

[5] This charge 12, requested by the defendant, which was given by the court, did not estop him from requesting the court to give written charges numbered 13 and 10. These charges read as follows:

"Gentlemen of the jury, the court charges you that, if Pankey agreed with Gray substantially to obtain the best possible terms of purchase for him and then, without Gray's full knowledge and consent, agreed with one or more of the vendors to represent their interests against Gray, the conflict in Pankey's duties made it impossible for him to show himself entitled to compensation from either Gray or the vendors.

"Gentlemen of the jury, you are instructed that a real estate agent, selling for both parties, can recover compensation from neither, unless he kept both parties at all times fully and candidly informed of his dual representation, and the burden of proof is on him, under

such circumstances, to prove his entire good faith."

These charges were separately given by the court to the jury at the defendant's request. They are in full accord with the law as applicable to the issues and the testimony. Authorities supra.

The principle declared in Clinton Mining Co. v. Bradford, 192 Ala. 576, 69 South. 4, headnote 5, has no application to this case. The plea in this case was:

"General issue, with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action, to have effect as if so pleaded, and with leave to the plaintiff to give in evidence any matter which, if well pleaded, would be admissible in reply to such defensive matter, to have effect as if so pleaded."

There was no immaterial issue in this case. There was in Clinton Mining Co. v. Bradford, supra. The above charges (10, 12, and 13), requested by the defendant and given by the court, were in accord with the issues and the law as shown by this opinion, as it applied to the different phases of the evidence in the case.

The application for rehearing is overruled.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.