241 So.2d 113

David GURGANUS

v.

Douglas KIKER and Mable Kiker.

6 Div. 670.

Supreme Court of Alabama.

July 10, 1970.

Rehearing Denied Nov. 12, 1970.

Skidmore, Skidmore & Crownover, Tuscaloosa, for appellant.

Robert V. Wooldridge, Jr., Tuscaloosa, for appellees.

PER CURIAM.

This is a statutory ejectment suit. The complaint was filed in the Circuit Court of Tuscaloosa County on July 31, 1967, by Douglas Kiker and Mable Kiker against David Gurganus. There was a demand for a jury trial made by the plaintiff, but when the case was called for trial, the jury demand was withdrawn. Defendant's demurrers were overruled and a plea of the general issue in short by consent was filed. On January 9, 1968, the cause was tried by the court without the intervention of a jury. At the conclusion of the trial, the court took the cause under submission.

On March 22, 1968, the court issued the following:

"MEMORANDUM FOR ATTORNEYS

"After extended consideration the Court is now of the opinion that judgment in this case should be entered for the plaintiffs.

"Hon. Robert V. Wooldridge, Jr., is requested to prepare appropriate judgment which will be signed after it has been inspected by Mr. McGuire and the judgment date will be fixed at the time of signature.

"Dated this 22nd day of March, 1968.

"Submitted by Fred W. Nicol
        Circuit Judge."

We observe that appearances of counsel show Mr. Robert V. Wooldridge, Jr., on behalf of plaintiff, and Mr. Jack H. McGuire on behalf of defendant. Later, counsel, here appearing for appellant, filed in the Circuit Court a motion for a new trial.

On March 26, 1968, the formal judgment was signed and filed. The judgment was rendered in favor of plaintiffs and against the defendant for the possession of the property as described in the complaint, to wit:

"All of the portion of the NE ¼ of SE ¼ of Section 13, Township 17 South, Range 9 West, that lies West of Alabama Highway No. 69, containing ten (10) acres, more or less."

Thereafter, and on April 25, 1968, a motion for new trial was filed. The motion was later taken under submission, and thereafter overruled on November 22, 1968.

It is the defendant's contention in brief that the plaintiffs did not meet the burden of proof, also, that the judgment was not supported by the evidence. It is contended than no one could sue defendant after February 21, 1957, which ended the statutory period of ten years.

The plaintiffs claim title by conveyance in March, 1962. At that time, Mable Gurganus Kiker owned the land in the South half of the NE ¼ of this section. The defendant was her father-in-law, plaintiff having married one of his sons. Following his death, she married Douglas Kiker.

The triangular strip of the land in dispute is located in the NW corner of the NE ¼ of the SE ¼ of the Section and is bounded on North and West by the Quarter Section lines. The eastern and southern boundary is the Alabama Highway No. 69.

Plaintiff's Exhibit #1, a map, engineered to scale, shows the area in dispute and the surrounding areas. This map was used during the trial in the examination of many of the witnesses. Plaintiff testified there was a road that "runs from the highway over to your house." This roadway splits the disputed strip in half.

It seems from the evidence that there was general recognition that there was some "mix-up" on record concerning this disputed strip—due possibly to an error in the description in one of the deeds.

On direct examination of plaintiff Douglas Kiker, he testified, in part, as follows:

"Q. Now, immediately before this suit was filed, did you have any conversations with the Defendant with respect to any claim he might have to this property?

"A. Yes sir, we talked about it on numerous occasions in a friendly fashion. We never had any hard words over it I wouldn't think.

"Q. Was he claiming to own an interest in it?

"A. Yes, sir, in 1963 we had a discussion when I was building a fence around the other 40.

"Q. Just tell the Judge what transpired in that conversation.

"A. Well, Mr. Gurganus told me he had a claim to the 10 acres and at that time he asked me not to build a fence around it and I didn't and at that time he said he would like to get it settled and we both agreed we would like to get it settled and he said if we would have an abstract run, at that time, however the abstract proved out, that the one that got it would abide by it and pay for the abstract.

"Q. After that conversation did you obtain an abstract?

"A. Yes, sir.

"Q. Was the abstract made available to him?

"A. Yes, sir, I gave it to Mr. Gurganus.

"Q. Before the abstract was obtained he said whatever the abstract showed he would abide by it?

"A. Yes, sir.

"Q. If it showed your wife owned it that would be the end of it?

"A. He said he would abide by whatever the abstract said.

"Q. That was in 1963:

"A. Yes, sir.

"Q. Do you recall what time of the year in 1963 that was?

"A. It was in the fall because I planted my pasture in the fall and it was winter pasture.

"Q. In the fall of '63?

"A. As far as I can recall.

"Q. After you got the abstract, did you show it to him or make it available to him?

"A. Yes, sir.

"Q. Did you all have any further conversations concerning it?

"A. Yes, sir, he brought the abstract back. I don't know, he kept it maybe a week or two. It was quite a few days and when he brought it back he told me he had changed his mind and he would try to hold the land through possession.

"Q. He had decided to try to hold it through possession?

"A. Yes, sir.

"Q. You sure those are the words he used, that he was going to try to hold it through possession?

"A. As far as I can recall.

"Q. Is that your best judgment?

"A. Yes, sir."

On direct examination, Plaintiff, Mable Gurganus Kiker, gave the following testimony:

"Q. Now since 1962, from the time you bought that property up until immediately sometime soon before this property was purchased, did the Respondent make any claim to you with respect to that property?

"A. My husband was going to put a fence up out there.

"Q. When was that?

"A. At the time we got the abstract. I don't remember the exact date.

"Q. About 1963?

"A. Douglas was going go (sic) build a fence and he asked him not to, that it was his, and if he would get a title or abstract he would be satisfied, and we went to Tuscaloosa Title Company and got an abstract.

"Q. He said he would abide by the abstract?

"A. He would abide by the abstract. If it was ours we would pay it, but it would be settled once and for all.

"Q. Who paid for the abstract?

"A. We did."

We have carefully checked the testimony of the defendant, Mr. Gurganus, and cannot find a denial of either conversation with the plaintiffs. At least, it would appear that the defendant recognized the existence of an error in description that brought on the dispute of ownership.

Plaintiff's Exhibit #2 was an abstract of title covering the property in dispute and appears in the transcript.

Five witnesses testified for the plaintiff and seven for the defendant. Most of them had lived nearby for many years. On occasions, counsel would point, or refer, to the map and ask the witness something in relation thereto. As an example, we quote from Question and Answer on cross examination of the witness, defendant Gurganus, as follows:

"Q. Show me on the map what you took possession of?

"A. Up and down the road along here.

"Q. Would you point to it again, sir?

"A. This part there, along there."

This recurred in examinations of other witnesses. While we feel certain the trial judge saw on the map or drawing where the witness indicated, there is no way the writer here, or any member of this Court, can have this information. While this map is before the Court, it does not help in this regard.

In Garrett v. Kirksey, 279 Ala. 10, 181 So.2d 80, we held:

"* * * We cannot disturb this finding based as it was on testimony taken orally before the trial court. Particularly is this true in this case where the record is full of questions and answers which obviously refer to a point on a diagram or plat. The points referred to in those questions and answers are designated in the record by nothing except the words 'here' and 'there.' Such testimony is meaningless without the pointing finger, or some additional information, to designate the particular spot on the diagram or plat intended by the witnesses. The diagram or plat which was drawn on the blackboard is not before us. The trial court could see the place on the drawing on the blackboard to which the witnesses pointed. We cannot. Consequently we cannot disturb the trial court's finding as to where the parties placed the northern line of the land to be conveyed by the Garretts. Christian v. Reed, 265 Ala. 533, 92 So.2d 881; * * *."

We have read and studied the entire testimony. The evidence was extended as to the title and acts of possession concerning the area in litigation. Much of the evidence is denied or disputed and it is most difficult to resolve. Further discussion is not indicated.

The testimony was taken ore tenus before the trial judge, who had the witnesses before him, heard their testimony and observed their demeanor on the stand. His judgment will not be disturbed on appeal unless plainly wrong. Mangina v. Bush, et al., 286 Ala. 90, 237 So.2d 479, June 18, 1970; Kirkman v. Pittman, 269 Ala. 159, 111 So.2d 583; Aniton v. Robinson, 273 Ala. 76, 134 So.2d 764.

We cannot say that the trial court was plainly wrong in its decree.

Other assignments of error not argued in brief are not considered, Rule 9, Revised Rules of the Supreme Court, 279 Ala. XXIII; Smart v. Wambles, 271 Ala. 651, 127 So.2d 611.

We find no reversible error and the decree of the lower court is affirmed.

The foregoing opinion was prepared by J. Edgar Bowron, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN, BLOODWORTH and Mc-CALL, JJ., concur.

### ON REHEARING

PER CURIAM.

On application for rehearing, defendant contends that the evidence, even its most favorable interpretation to plaintiffs, did not authorize the trial court's rendition of judgment for the plaintiffs.

The offered bases of defendant's contention are two:

(1) That the plaintiffs' action was barred by the ten-year statute of limitations (Code of Alabama 1940, Recompiled in 1958, Title 7, Sec. 20), and

(2) That the evidence was not sufficient to warrant a finding that plaintiffs, or any of plaintiffs' remote grantors, or plaintiffs' immediate grantor, was ever in possession of the subject property.

Defendant's only claim to title asserted in this court is title by adverse possession.

The first answer to both of defendant's bases (1) and (2), stated above, is that defendant, in his conversations in 1963 with each of the plaintiffs, set out in our original opinion, impliedly admitted in substance that if an abstract of title on subject property was procured and showed that the plaintiffs had a better paper title than defendant, he, the defendant, would abide by the abstract.

The abstract of title was procured and showed that plaintiffs had a better paper title than defendant.

Defendant did not question the correctness of the abstract.

■ The defendant's admission in the conversations between him and the plaintiffs, undenied by him, plus his failure to deny the correctness of the abstract of title, warranted a finding that defendant neither had title by adverse possession nor any right to retain possession by reason of the ten-year statute of limitations.

Defendant contends that the testimony of defendant's above-mentioned implied admission was "patently inadmissible" because the discussion between plaintiffs and defendant about the abstract of title "was at its best, a discussion seeking a compromise of the dispute between them."

We disagree.

■ Though a party's offer of compromise is not provable against him as an implied admission of the weakness of his claim, or of the strength of his adversary's claim, yet his express statement of a fact or even of his opinion (Strickland v. Davis, 221 Ala. 247, 128 So. 233), including a statement of claim or nonclaim, concerning the existence of a relevant fact, though made during negotiations for compromise, is admissible against him. York v. Chandler, 40 Ala.App. 58, 109 So.2d 921, cert. den. 268 Ala. 700, 109 So.2d 925 (reviewing earlier cases); McElroy, The Law of Evidence in Alabama, 2d Ed., Sec. 188.01(2)(3), Vol. Two, p. 11.

In York v. Chandler, supra, the Court of Appeals said:

"It has also been held that where, in an attempt to arrange a settlement of a controversy without resorting to litigation, statements are made which amount to a tacit admission of liability, or evince a consciousness on the part of the speaker of his liability, such admissions are admissible. See 80 A.L.R., p. 929, and cases there cited."

We consider as especially applicable here the case of Ford v. Bradford, 212 Ala. 515, 518, 103 So. 549.

In that case, Ford sued Bradford for wrongfully cutting trees on Ford's land. A dispute existed as to whether Ford or Bradford owned the land on which the trees were cut.

The trial court rejected evidence offered by Ford that after some of the trees on the disputed tract had been cut by Bradford, Ford and Bradford agreed that Bradford "should go ahead and haul the timber which had been cut, and saw it, and give the plaintiff (Ford) one fourth of the lumber."

We held that the trial court erred in that ruling; in that such offered evidence, in connection with other evidence given by the plaintiff, tended to show plaintiff's ownership of the trees.

If it be assumed (which we should not) that evidence of the discussions between plaintiffs and the defendant in 1963 about the abstract of title, was "patently inadmissible," yet that evidence was not objected to by defendant, and having been admitted without objection should be given the same weight it would have been given had it been admissible. Hackmeyer v. Hackmeyer, 268 Ala. 329, 106 So.2d 245; Birmingham Railway & Electric Co. v. Wildman, 119 Ala. 547, 24 So. 548.

■ The rule that inadmissible evidence, admitted without objection, should be given the same weight as if it had been admis-

sible, applies even when such evidence is inadmissible hearsay. McElroy, Law of Evidence in Alabama, 2d Ed., Vol. 2, Sec. 242.01, pp. 200–201.

The defendant's statements in the above-referred-to discussions about the abstract of title were not an offer of compromise.

In a civil action, a party's extra-judicial admission is substantive evidence against him of the existence of the matter admitted; and, generally, a finding of existence of the matter admitted may be based on such admission without any other evidence of the existence of the matter admitted. Waller v. Simpson, 208 Ala. 333, 94 So. 343; Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; Gray v. Pankey, 211 Ala. 539, 100 So. 880; Shook v. Pate, 50 Ala. 91; McElroy, The Law of Evidence in Alabama, 2d Ed., Vol. 2, Sec. 180.01(4), p. 2.

Speaking further to defendant's contention that plaintiffs' action (which was commenced on July 31, 1967) was barred by the ten-year statute of limitations: The record shows that Douglas Kiker testified in substance that he had been living in his present home, which was near the subject property, since 1962, and that from 1962 up until 1967, the defendant was not in possession of the subject property.

This above-mentioned testimony of Douglas Kiker, if true, renders applicable the rule that the ten-year statute of limitations (Title 7, Sec. 20, supra) does not apply unless defendant was *in adverse possession* during the whole of the ten-year period next preceding the commencement of the action. See Ellis v. Stickney, 353 Ala. 86, 94, 42 So.2d 779; Shorter v. Smith, 56 Ala. 208.

The above-mentioned testimony of defendant's nonpossession from 1962 to 1967 in connection with other testimony was sufficient to warrant a finding that no one was in actual possession during that period of time; and hence that plaintiffs were in constructive possession during that period of time—in consequence of the rule that if no one is in actual possession of land, the law ascribes possession to him who has paramount legal title. Southern Railway Co. v. Hall, 145 Ala. 224, 226, 41 So. 135, 136; Brunson v. Bailey, 245 Ala. 102, 104, 16 So.2d 9.

Prior constructive possession, based on paramount legal title, is sufficient to authorize recovery in statutory ejectment under a complaint in the form set forth in Title 7, Sec. 223, Form No. 32, Code of Alabama 1940, Recompiled in 1958. Veitch v. Hard, 200 Ala. 77, 80, 75 So. 405.

We come now to defendant's contention that there was no evidence warranting a finding that plaintiffs, or their remote grantors or plaintiffs' immediate grantor, were ever in possession of the subject land.

We think the evidence will support the conclusion that the trial court was not plainly and palpably wrong in finding that some of the predecessors in title of plaintiffs, as shown by the abstract, were in actual possession of the land in controversy.

The foregoing opinion was prepared by J. EDGAR BOWRON, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Opinion extended and application for rehearing overruled.

SIMPSON, COLEMAN, BLOODWORTH, MADDOX and McCALL, JJ., concur.